UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRYANT HARDY, | ) |
| Petitioner, | ) ) ) |
| vs. | ) Case No: 4:20CV171 HEA |
| BILL STANGE, | ) ) ) |
| Respondent. | ) ) |

## OPINION, MEMORANDUM AND ORDER

Petitioner filed a *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 [Doc. No.1] on January 29, 2020. Respondent filed a Response to the Court's Order to Show Cause Why Relief Should Not be Granted on April 20, 2020. Pursuant to Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts, this Court has determined that there are no issues asserted that give rise to an evidentiary hearing and therefore one is not warranted. For the reasons explained below, the Response is well taken, and the petition will be denied.

**Factual Background**

The Missouri Appellate Court described the facts of Petitioner's criminal case and post-conviction claims as follows:

> Hardy was arrested on December 30, 2013, and charged with the six counts outlined above in connection with his abuse of Victim. Victim's mother

married Hardy in 2007 when Victim was ten years old. The alleged instances of abuse occurred over a period of time between 2005 and 2011. Victim disclosed the abuse to her school's assistant principal in December of 2013.

Hardy's trial began on April 6, 2015. Victim testified on direct examination that Hardy first performed a sex act on her in the bathroom of an apartment on Hamilton, and that the only other person in the apartment at that time was Dean. Hardy testified and denied that he was ever in the bathroom with Victim:

Q: And the incident that she was talking about was you going into the bathroom, you took [Victim] into the bathroom?
A: No.
Q: You never took [Victim] in the bathroom?
A: Never to the bathroom.
Q: And she said that Uncle Mel [Dean] was there; is that right?
A: Ma'am, I never took her to no bathroom.
Q: Okay. My question is, Uncle Mel [Dean] was there, correct?
A: Uncle Mel [Dean] stayed there.
Q: Was Uncle Mel [Dean] on the couch at a time that you took her into the bathroom?
A: I don't — I don't — I don't under — understand what you're saying.
Q: Was there a time that Uncle Mel [Dean] was on the couch and you took [Victim] into the bathroom?
A: I have never took [Victim] in the bathroom. [Victim] go in the bathroom by herself.

A. Dean's Testimony

The State called Dean as a rebuttal witness. Dean testified that Victim called him Uncle Mel, and that he lived at the same apartment on Hamilton as Hardy and Victim. The following
exchange then occurred:

Q: And was there ever a time that you were there, and [Victim] was there, and her stepdad — her stepdad — her mom's boyfriend, was there?
A: Yes.
Q: Okay, what's his name?
A: Bryant Hardy.

2

Q: All right. And do you recall a time when you were on the couch?
A: Yes.
Q: Can you tell us what you saw when you were on the couch?
A: I was laying on the couch and I saw [Victim] and Bryant — Bryant going to the bathroom together. And I laid on the couch, and I heard them, you know, urinating in the toilet. Still I heard the —

At this point, counsel for Hardy objected based on hearsay. The trial court overruled the objection and Dean's testimony continued:

A: I heard her say, "Daddy what's that?" And he said something. And I jumped up and I went in there and told by sisters, both her mother and her Auntie Keeta, what happened. And [Victim] —
Q: Well, let me stop you real fast.
A: Okay.
Q: So, going back, you were laying on the couch?
A: Yes.
Q: Okay, was there only one bathroom or was there more than one?
A: One. One that I've seen.
Q: Okay. And you said they went in there together?
A: Yes.
Q: And was the door open or closed?
A: Closed.
Q: Do you know who closed the door?
A: No.
Q: All right. And he said that you heard a sound?
A: Yes.
Q: And what did it sound like?
A: Somebody urinating in the toilet stool.
Q: Was it loud to you?
A: It was — it was a man that was urinating in the toilet stool.
Q: So, that would sound different than a woman, I guess?
A: Yeah, yeah, a little girl, yeah.
Q: Okay. And was [Victim] a little girl at the time this happened?
A: Yes.
Q: Okay. And you said you heard her say something?
A: Yes, she said, "Daddy, what's that?"

Counsel for Hardy again objected based on hearsay, and the trial court again overruled the objection. Dean's testimony continued as follows:

3

A: She said, "Daddy, what's that?" And he said something to her. I didn't pick up what he said, but I knew I paused for a minute, jumped up, went in there and told her mother and told her Auntie Keeta that she was in the bathroom with Bryant.

B. Det. Barone's Testimony

Det. Barone was called as a witness for the State. Det. Barone testified that he had six years of experience as a police officer, including one-and-a-half years of experience in the child abuse unit. Det. Barone was asked if he was familiar with the term "delayed disclosure," and he stated he was. The trial court overruled Hardy's objection and, following a sidebar with the attorneys, ruled that the State could ask Det. Barone about (1) his definition of delayed disclosure; and (2) the frequency with which he encountered delayed disclosure in the cases he investigated. The following exchange then occurred:

Q: Detective, we were just talking about delayed disclosure. Can you just tell us what that is?
A: Delayed disclosure occurs when someone is victimized generally in sexual abuse cases and they delayed reporting for a period of time.
Q: In other words, not immediately?
A: That's correct.
Q: And how often would you say that you encounter that as a child abuse detective?
A: The vast majority of my sexual abuse cases are delayed disclosures.
Q: I'm sorry, are?
A: Are delayed disclosures, yes.
Q: Thank you.

C. Verdict and Post-Trial Proceedings

Hardy orally renewed his motion for speedy trial before the end of trial. The jury returned a verdict finding Hardy guilty of all six counts. Hardy subsequently filed a motion for judgment of acquittal notwithstanding the verdict, or, in the alternative, motion for new trial. In Hardy's motion, he alleged, *inter alia*, that the trial court erred in (1) overruling Hardy's objection to Det. Barone's testimony about delayed disclosure because such testimony was expert testimony and was irrelevant; (2) overruling Hardy's objection to Victim's hearsay statement offered through Dean's testimony;

4

and (3) erred in denying hardy's motion for speedy trial. This appeal follows.

## Standard of Review

Federal habeas relief is available to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). See also *Williams-Bey v. Trickey*, 894 F.2d 314, 317 (8th Cir. 1990).

To obtain federal habeas review of a claim raised in a § 2254 petition, the petitioner must have first raised the federal constitutional dimensions of the claim in state court in accordance with state procedural rules. *Duncan v. Henry*, 513 U.S. 364 (1995) (per curiam); *Beaulieu v. Minnesota*, 583 F.3d 570, 573 (8th Cir. 2009) (quoted case omitted). To preserve issues for federal habeas review, a state prisoner must fairly present his claims to state courts during direct appeal or in post-conviction proceedings. *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997).

Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. *Id*. at 1150 (cited case omitted). A state prisoner who "fails to follow applicable state procedural rules for raising the claims is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." *Id*. at 1151 (cleaned up) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." *Abdullah v. Groose*, 75 F.3d

408, 411 ha(8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.' " *Id*. at 411-12. A state-law claim raised in state court that "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." *Id*. at 412.

If the petitioner failed to properly present the claim in state court, and no adequate non-futile remedy is currently available by which he may bring the claim in that forum, the claim is deemed procedurally defaulted and cannot be reviewed by the federal habeas court "unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; see also *Martinez v. Ryan*, 566 U.S. 1, 10-11 (2012).

Where the state court adjudicated a claim on the merits, federal habeas relief can be granted on the claim only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. §

6

2254(d)(2); see *Williams v. Taylor*, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time the petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. *Id*. at 380-83.

A state court's decision is "contrary to" clearly established Supreme Court precedent when it is opposite to the Supreme Court's conclusion on a question of law or different than the Supreme Court's conclusion on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 412-13; *Carter v. Kemna*, 255 F.3d 589, 591 (8th Cir. 2001). A State court's decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Merely erroneous or incorrect application of clearly established federal law does not suffice to support a grant of habeas relief. Instead, the state court's application of the law must be objectively unreasonable. *Id*. at 409-11; *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011). Finally, when reviewing whether a state court decision involves an "unreasonable determination of the facts" in light of the evidence presented in the state court proceedings, state court findings of basic, primary, or historical facts are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Rice v. Collins*, 546 U.S. 333, 338-

7

39 (2006); *Collier v. Norris*, 485 F.3d 415, 423 (8th Cir. 2007). Erroneous findings of fact do not automatically require the grant of habeas relief, however. Instead, the determination of these facts must be unreasonable in light of the evidence of record. *Collier*, 485 F.3d at 423; *Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001).

The federal court is "bound by the AEDPA [Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying State court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003). "To obtain habeas relief from a federal court, a state prisoner must show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.' " *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). This standard is "difficult to meet." *Id*.

**Procedurally Defaulted Claims**

**Ground One – Ineffective assistance of Counsel for failing to replace Juror 1115**.

In Ground One of the Petition, Petitioner claims counsel was ineffective for failing to replace Juror 1115 after the victim indicated that she and her aunt knew him. Petitioner raised this claim in his amended motion for post-conviction relief, but he did not raise it on post-conviction appeal. A claim must be presented at each

8

step of the judicial process in state court in order to avoid procedural default. *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994).

If a petitioner fails to demonstrate cause, the court need not address prejudice. *Cagle v. Norris*, 474 F.3d 1090, 1099 (8th Cir. 2007). Petitioner has neither presented cause, nor has Petitioner shown that a fundamental miscarriage of justice would occur if the Court does not review the merits of the claim. Petitioner has presented no new evidence of actual innocence, nor has he shown that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006); *Weeks v. Bowersox*, 119 F.3d 1342, 1352-53 (8th Cir. 1997). Consequently, the claim raised in Ground One is procedurally barred from habeas review and will be denied.

**Ground Three – Ineffective assistance of counsel for failing to submit a lesser-included offense instruction.**

In Ground Three, Petitioner asserts counsel was ineffective for failing to submit a lesser-included offence instruction. During his post-conviction proceedings. A claim must be presented at each step of the judicial process in state court in order to avoid procedural default. *Jolly*, 28 F.3d at 53. Petitioner fails to demonstrate cause for his procedural default. He does not present any evidence as to actual prejudice nor does he show a fundamental miscarriage of justice. Petitioner has not presented any new evidence of actual innocence, nor has he

9

shown that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Abdi*, 450 F.3d at 338.

Accordingly, Ground Three is procedurally defaulted.

**Ground Four – Insufficient evidence to convict Petitioner of forcible rape**.

In Ground Four, Petitioner claims there was insufficient evidence to convict him of forcible rape. Petitioner did not raise this claim on direct appeal, or at any stage of the state court proceedings.

Because Petitioner failed to properly present the claim in state court, and no adequate non-futile remedy is currently available by which he may bring the claim in that forum, it is procedurally defaulted and cannot be reviewed by this Court. *Coleman*, 501 U.S. at 750. This Court may review the merits of the claim only if cause is shown for the default and actual prejudice resulted from the alleged constitutional violation, or if Petitioner shows that a fundamental miscarriage of justice would occur if the Court were not to address the claim. *Id*.

Petitioner alleges no cause for his default or actual prejudice resulting from the alleged unconstitutional error. Nor has he shown that a fundamental miscarriage of justice would occur if the Court does not review the merits of the claim. Petitioner has not presented any new evidence of actual innocence, nor has he shown that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Abdi*, 450 F.3d at 338. Consequently, the claim

10

raised in Ground Four is procedurally barred from habeas review and will be denied.

**Non-defaulted Claim**

**Ground Two-Ineffective assistance of counsel for failure to call Officer Johnson.**

In Petitioner's petition, he alleges counsel "was ineffective for failing to call Officer Courtney Johnson Specifically, Movant claimed that Johnson's testimony supported his defense that he never raped the victim. The Motion Court denied his claim, finding that counsel's decision not to call Johnson was reasonable under the *Strickland* standard. Counsel explained that he did not call Johnson because he thought she would be an unfriendly witness, no longer worked for the police department and that he elicited the testimony that the witness gave inconsistent statements from other sources. Trial counsel testified that he believed this was reasonable trial strategy. "Numerous choices affecting conduct of the trial, including the objections to make, the witnesses to call, and the arguments to advance, depend not only upon what is permissible under the rules of evidence and procedure but also upon tactical considerations of the moment and the larger strategic plan for the trial." *Gonzalez v. United States*, 553 U.S. 242, 249 (2008).

The Missouri Court of Appeals addressed the merits and denied it under the *Strickland* standard. *Strickland v. Washington*, 466 U.S. 668 (1984) This decision is entitled to deference. The record establishes that counsel did not call Officer

11

Johnson because he perceived her as an unfriendly witness, and he was able to solicit the evidence she would provide through other sources. Under *Strickland*, trial counsel's decision was a strategic decision and does not establish prejudice under *Strickland*. *Armstrong v. Kemna*, 590 F.3d 592, 605-06 (8th Cir. 2010). To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must satisfy the two-prong *Strickland* test and show: "(1) that counsel's performance was deficient, in that he failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances; and (2) that counsel's deficient performance prejudiced Appellant's defense." *Robinson v. State*, 497 S.W.3d 298, 301 (Mo. App. E.D. 2016) (citing *Strickland*, 466 U.S. at 686; *Deck v. State*, 68 S.W.3d 418, 425 (Mo. banc 2002)).

To meet the performance prong, a movant must "overcome the presumptions that any challenged action was sound trial strategy, and counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." *Id*. To prove prejudice, a movant "must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*.

"To prevail on a claim of ineffective assistance of counsel for failure to call a witness, a defendant must show that: (1) trial counsel knew or should have known of the existence of the witness; (2) the witness could be located through

12

reasonable investigation; (3) the witness would testify; and (4) the witness's testimony would have produced a viable defense." *Haidul v. State*, 425 S.W.3d 148, 150 (Mo. App. E.D. 2014) (quoting *Williams v. State*, 168 S.W.3d 433, 441 (Mo. banc 2005)). However, even if a movant can prove these elements, counsel's decision not to call a witness is presumptively a matter of trial strategy and ordinarily will not support a claim of ineffective assistance of counsel. *Robinson*, 497 S.W.3d at 301. Additionally, it is not ineffective assistance of counsel to pursue one reasonable trial strategy to the exclusion of another reasonable trial strategy. *Id*.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland*, 466 U.S. at 686. The Supreme Court set forth the standard governing ineffective assistance of counsel claims in Strickland. To establish ineffective assistance of counsel, a petitioner must show both that (1) his counsel's performance was deficient, or that it "fell below an objective standard of reasonableness," and also that (2) "the deficient performance prejudiced the defense." Id. at 687-88. *Strickland* provides a "highly deferential" standard to review ineffective assistance of counsel claims by having courts "apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689).

13

On federal habeas review, the Court does not determine whether Petitioner's counsel provided effective assistance, but instead "whether the state court's application of the *Strickland* standard was unreasonable." See *Harrington*, 562 U.S. at 101; see also *Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). "This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. Instead, the Court must determine "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Id*. at 105.

The Missouri Court of Appeals correctly identified *Strickland* as the standard to apply. That court's application of the *Strickland* standard to this claim of ineffective assistance of trial counsel was not unreasonable for the reasons stated by it. See *Harrington*, 562 U.S. at 101.  Consequently, this ground for relief must be denied.

## Conclusion

For the foregoing reasons, the Court concludes that the grounds in Petitioner's Petition for Writ of Habeas Corpus are either procedurally barred or fail on the merits and must be denied in all respects.

## Certificate of Appealability

In a § 2255 proceeding before a district judge, the final order is subject to review on appeal by the court of appeals for the circuit in which the proceeding is held. 28 U.S.C. § 2253(a). However, unless a circuit judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. § 2253(c)(1)(A). A district court possesses the authority to issue certificates of appealability under § 2253(c) and Fed. R. App. P. 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under § 2253(c)(2), a certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Tiedeman*, 122 F.3d at 523. To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Miller-El*, 537 U.S. at 335–36 (reiterating standard).

Courts reject constitutional claims either on the merits or on procedural grounds. " '[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he [movant] must demonstrate that reasonable jurists would find the district court's assessment

15

of the constitutional claims debatable or wrong.' " *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a motion is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [movant must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, the Court finds that Movant has failed to make the requisite "substantial showing." *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Accordingly, a certificate of appealability will not issue.

Accordingly,

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus, [Doc. No. 1], is **DENIED**.

**IT IS FURTHER ORDERED** that this Court will not issue a Certificate of Appealability as Movant has not made a substantial showing of the denial of a

federal constitutional right.

      A separate judgment is entered this same date.

      Dated this 26th day of March, 2021.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE